UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

JOHN DOE CORPORATION,

        Plaintiff,

  v.

PUBLIC COMPANY ACCOUNTING OVERSIGHT BOARD,

        Defendant,

UNITED STATES OF AMERICA,

        Defendant-Intervenor.

Case No. 24-cv-02443

**THE UNITED STATES OF AMERICA'S MEMORANDUM OF LAW
IN DEFENSE OF THE CHALLENGED PROVISIONS
OF THE SARBANES-OXLEY ACT**

# TABLE OF CONTENTS

INTRODUCTION ..........................................................................................................................1

BACKGROUND ............................................................................................................................1

        A.       The Sarbanes-Oxley Act and the Board..............................................................1

        B.       The Board's Authority to Conduct Investigations .............................................2

        C.       Procedural History................................................................................................3

ARGUMENT..................................................................................................................................5

I.       THE SARBANES-OXLEY ACT DOES NOT VIOLATE THE PUBLIC-
NONDELEGATION DOCTRINE ....................................................................................5

II.      THE SARBANES-OXLEY ACT DOES NOT VIOLATE THE PRIVATE-
NONDELEGATION DOCTRINE ....................................................................................8

        A.       The Board Is a Governmental Entity...................................................................8

        B.       The Board Functions Subordinately to the SEC ................................................9

CONCLUSION.............................................................................................................................12

## TABLE OF AUTHORITIES

**CASES**

*A.L.A. Schechter Poultry Corp. v. United States*,
   295 U.S. 495 (1935) ................................................................................................................6

*Am. Power & Light Co. v. SEC*,
   329 U.S. 90 (1946) ............................................................................................................. 6, 7

*Carter v. Carter Coal Co.*,
   298 U.S. 238 (1936) ..............................................................................................................10

*Eubank v. City of Richmond*,
   226 U.S. 137 (1912) ................................................................................................................9

*\*Dep't of Transp. v. Ass'n of Am. R.Rs.*,
   575 U.S. 43 (2015) ..................................................................................................................9

*Fahey v. Mallonee*,
   332 U.S. 245 (1947) ................................................................................................................7

*Fed. Power Comm'n v. Hope Nat. Gas Co.*,
   320 U.S. 591 (1944) ................................................................................................................6

*First Jersey Sec., Inc. v. Bergen*,
   605 F.2d 690 (3d Cir. 1979) .................................................................................................12

*\*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
   561 U.S. 477 (2010) .......................................................................................................*passim*

*Gundy v. United States*,
   588 U.S. 128 (2019) ........................................................................................................... 6, 8

*J.W. Hampton, Jr. & Co. v. United States*,
   276 U.S. 394 (1928) ................................................................................................................6

*Lichter v. United States*,
   334 U.S. 742 (1948) ................................................................................................................7

*Loving v. United States*,
   517 U.S. 748 (1996) ................................................................................................................7

*Mistretta v. United States*,
   488 U.S. 361 (1989) ........................................................................................................... 6, 7

*Nat'l Broad. Co. v. United States*,
   319 U.S. 190 (1943) ...........................................................................................................6

*Oklahoma v. United States*,
   62 F.4th 221 (6th Cir. 2023) ............................................................................................11

*Pan. Refin. Co. v. Ryan*,
   293 U.S. 388 (1935) ...........................................................................................................6

*R.H. Johnson & Co. v. SEC*,
   198 F.2d 690 (2d Cir. 1952) ............................................................................................12

*Sanchez v. Office of State Superintendent of Educ.*,
   4 F.4th 388 (D.C. Cir. 2022) .............................................................................................5

*Sorrell v. SEC*,
   679 F.2d 1323 (9th Cir. 1982) ........................................................................................12

*Sunshine Anthracite Coal Co. v. Adkins*,
   310 U.S. 381 (1940) ........................................................................................9, 10, 11, 12

*Thomas Cusack Co. v. City of Chicago*,
   242 U.S. 526 (1917) ................................................................................................... 9, 10

*Todd & Co. v. SEC*,
   557 F.2d 1008 (3d Cir. 1977) .........................................................................................12

*Touby v. United States*,
   500 U.S. 160 (1991) ...........................................................................................................7

*Vt. Yankee Nuclear Power v. Nat. Res. Def. Council*,
   435 U.S. 519 (1978) ...........................................................................................................8

*Washington ex rel. Seattle Title Tr. Co. v. Roberge*,
   278 U.S. 116 (1928) ...........................................................................................................9

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ...................................................................................................... 5, 6

*Yakus v. United States*,
   321 U.S. 414 (1944) ...........................................................................................................7

**STATUTES**

15 U.S.C. § 78s ................................................................................................................... 2, 11

15 U.S.C. § 7202 .................................................................................................................. 11

15 U.S.C. § 7211 ................................................................................................................. 1, 4

15 U.S.C. § 7213 .................................................................................................................... 2

15 U.S.C. § 7214 .................................................................................................................... 2

15 U.S.C. § 7215 ............................................................................................. 2, 3, 5, 7, 8, 11

15 U.S.C. § 7217 ............................................................................................................. 2, 11

15 U.S.C. § 7219 ............................................................................................................. 2, 11

28 U.S.C. § 2403 .................................................................................................................... 4

**RULES**

Fed. R. Civ. P. 5.1 ................................................................................................................. 4

**INTRODUCTION**

The United States respectfully submits this memorandum of law in support of the constitutionality of the Sarbanes-Oxley Act of 2002, which established the Public Company Accounting Oversight Board. Plaintiff argues that the Act is unconstitutional under both the public and private nondelegation doctrines, but neither argument has merit. The Act does not violate the public-nondelegation doctrine because Congress has provided an intelligible principle to guide the Board's discretion in issuing rules and procedures. And the Act does not violate the private-nondelegation doctrine for two independent reasons. First, the doctrine does not apply to the Board because it is a governmental (as opposed to a private) entity. Second, even if the Board were considered a private entity, its structure is constitutional because the Board functions subordinately to the Securities and Exchange Commission. Accordingly, if the Court reaches the merits, it should hold that the challenged provisions of the Sarbanes-Oxley Act are constitutional.

**BACKGROUND**

**A.     The Sarbanes-Oxley Act and the Board**

In the Sarbanes-Oxley Act of 2002, Congress created the Public Company Accounting Oversight Board to oversee the accounting industry. The Board consists of five members, appointed and removable by the Securities and Exchange Commission. 15 U.S.C. § 7211(e). The Board was modeled on self-regulating organizations in the securities industry that operate under the SEC's oversight, such as the Financial Industry Regulatory Authority (FINRA) and its predecessor, the National Association of Securities Dealers (NASD). Like those organizations, the Board is designated by statute as a nonprofit corporation. *See* 15 U.S.C. § 7211.

"Unlike the self-regulatory organizations, however, the Board is a Government-created, Government-appointed entity," that is "part of the Government for constitutional purposes." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 485–86 (2010). The Board's members are

"Officers of the United States," and "exercise significant authority pursuant to the laws of the United States." *Id.* at 486 (alterations and citations omitted). The Board "promulgates auditing and ethics standards, performs routine inspections of all accounting firms, demands documents and testimony, and initiates formal investigations and disciplinary proceedings." *Id.* at 485 (citing 15 U.S.C. §§ 7213–15).

The statute also "places the Board under the SEC's oversight." *Id.* at 486. The SEC approves the Board's budget, 15 U.S.C. § 7219(b), and maintains "oversight and enforcement authority over the Board," *id.* § 7217(a). All Board rules must be approved by the SEC, and do not go into effect until approved. 15 U.S.C. § 7217(b) (incorporating 15 U.S.C. §§ 78s(b)–(c)). Likewise, any disciplinary sanction that the Board imposes on an accountant must be reported to the SEC, and it is then subject to *de novo* SEC review. 15 U.S.C. § 7217(c) (incorporating 15 U.S.C. §§ 78s(d)–(e)).

**B.     The Board's Authority to Conduct Investigations**

Section 105 of the Sarbanes-Oxley Act authorizes the Board to conduct investigations into accounting firms for potential violations of the Act or the Board's own rules. 15 U.S.C. § 7215(b). The Act directs the Board to "establish, by rule," and "subject to the requirements" of section 105(b), "fair procedures for the investigation and disciplining of registered public accounting firms and associated persons of such firms." 15 U.S.C. § 7215(a).

The statute then sets forth various requirements that govern the Board's procedures for investigations and disciplinary proceedings. It provides that the Board may require testimony or the production of documents from accounting firms or associated persons with respect to any matter "that the Board considers relevant or material to an investigation." *Id.* § 7215(b)(2). It provides for sanctions that may be imposed on accounting firms or associated persons for refusing to testify, produce documents, or otherwise cooperate with a Board investigation. *Id.* § 7215(b)(3). It provides that all documents prepared or received by the Board in an investigation shall be treated as

2

confidential.  *Id.* § 7215(b)(5).  It describes the notice that must be provided to accounting firms against whom the Board initiates disciplinary proceedings.  *Id.* § 7215(c)(1).  And it requires that such disciplinary proceedings "shall not be public, unless otherwise ordered by the Board for good cause shown, with the consent of the parties to such hearing."  *Id.* § 7215(c)(2).

Consistent with these requirements, the Board has promulgated rules implementing Section 105(a).  Those rules include authorizing the Board to issue "accounting board demands" for testimony and documents to accounting firms.  *See, e.g.*, Board Rules 5102, 5103.  Failure to comply with such a demand can result in the Board instituting disciplinary proceedings against the firm for failing to cooperate with a Board investigation.  *See id.* Rule 5110.  If the Board finds that a firm has failed to comply with a demand, it may impose various sanctions against the firm, including suspending its registration or imposing civil monetary penalties.  *Id.* Rule 5300(b).

**C.       Procedural History**

Plaintiff is a public accounting firm that has been the subject of a Board investigation since October 2021.  Am. Compl. ("Compl.") ¶ 57.  Plaintiff alleges that, during that time, the Board's Division of Enforcement and Investigations has issued six accounting board demands to Plaintiff.  *Id.*  The Board issued the most recent demand on March 14, 2024.  *Id.*  Plaintiff alleges that the demand "compel[ed] Plaintiff to produce . . . documents within two weeks" under threat of punishment for noncooperation.  *Id.*

On March 27, 2024, Plaintiff filed a four-count complaint against the Board in the U.S. District Court for the Southern District of Texas.  Count One asserted that Section 105 of the Sarbanes-Oxley Act is unconstitutional because it violates the nondelegation doctrine.  Count Two asserted that the Act is unconstitutional because it authorizes the Board, which Plaintiff alleges is a "private entit[y]," to exercise "unsupervised executive power," in violation of the so-called private nondelegation doctrine.  Count Three asserted that the Board's procedures relating to accounting

3

board demands violate the Due Process Clause, and Count Four asserted that those procedures violate Section 105(a) of the Sarbanes-Oxley Act.

The Board, represented by private counsel,[1] moved to dismiss the complaint on grounds including lack of personal jurisdiction, improper venue, and failure to state a claim. On July 12, 2024, the United States intervened in this action to defend the constitutionality of the Sarbanes-Oxley Act. ECF No. 28; *see* 28 U.S.C. § 2403(a) (authorizing the United States to intervene "[i]n any action . . . wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question"); Fed. R. Civ. P. 5.1(c) (similar).

While the Board's motion to dismiss was pending, Plaintiff filed an amended complaint, which added a fifth claim for "denial of right to jury trial in violation of the Seventh Amendment." Am. Compl. ¶¶ 81–83. The U.S. District Court for the Southern District of Texas then transferred the case to this Court. This Court then set a briefing schedule for the Board's motion to dismiss the Amended Complaint, ECF No. 48, and the Board moved to dismiss on September 20, 2024, ECF No. 49.

After the case was transferred, Plaintiff filed a petition for a writ of mandamus in the Fifth Circuit, contending that the transfer order violated a local rule that automatically stays transfer orders for 21 days. On October 3, 2024, the Fifth Circuit granted the petition on the "narrow procedural" ground that the transfer order should have been stayed, and ordered the district court to "request that DDC transfer [Plaintiff's] case against the Board back to SDTX" to allow for the requisite 21-day stay period. *In re John Doe Corp.*, No. 24-20407, at 2 (5th Cir. Oct. 3, 2024). The Fifth Circuit "express[ed] no view as to the merits of SDTX's transfer to DDC" and further

---

[1] The statute authorizes the Board to "sue and be sued, complain and defend, in its corporate name and through its own counsel, with the approval of the Commission." 15 U.S.C. § 7211(f)(1).

"recognize[d] that the ultimate decision regarding whether to transfer the case back to SDTX to allow for the 21-day stay period, remains the prerogative of DDC." *Id.*

The case currently remains pending in this Court, with Plaintiff's response to the Board's motion to dismiss due on October 31, 2024. The United States now submits this memorandum of law in defense of the challenged statutory provisions.

## ARGUMENT

Plaintiff contends that the Sarbanes-Oxley Act is unconstitutional in two respects. First, Plaintiff contends that Section 105(a) of the Act violates the public-nondelegation doctrine because it does not contain an intelligible principle. Compl. ¶¶ 66–70 (Count One). Second, Plaintiff contends that the Act violates the private-nondelegation doctrine because it delegates executive power to a private entity without meaningful supervision by the Executive Branch. Compl. ¶¶ 71–74 (Count Two). Neither of these arguments has merit.[2]

### I.  THE SARBANES-OXLEY ACT DOES NOT VIOLATE THE PUBLIC-NONDELEGATION DOCTRINE

Section 105(a) of the Sarbanes-Oxley Act authorizes the Board to "establish, by rule, subject to the requirements of this section, fair procedures for the investigation and disciplining of registered public accounting firms and associated persons of such firms." 15 U.S.C. § 7215(a). Plaintiff contends that this provision is unconstitutional under the public nondelegation doctrine. *See* Compl. ¶¶ 66–70.

"The nondelegation doctrine requires a legislature delegating authority to 'lay down by legislative act an intelligible principle to which the person or body authorized to act is directed to conform.'" *Sanchez v. Off. of State Superintendent of Educ.*, 45 F.4th 388, 401 (D.C. Cir. 2022) (quoting *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001)). It is "constitutionally sufficient if

---

[2] Because only Counts One and Two challenge the constitutionality of a statute, the United States addresses the merits of only those two counts.

5

Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of th[e] delegated authority.'" *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946).

"Those standards . . . are not demanding." *Gundy v. United States*, 588 U.S. 128, 146 (2019) (plurality op.). Although Congress has delegated authority since the beginning of the government, the Supreme Court has found only two delegations to be unconstitutional. *See Whitman*, 531 U.S. at 474. One "provided literally no guidance for the exercise of discretion," and the other "conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Id.* (quoting *Pan. Refin. Co. v. Ryan*, 293 U.S. 388 (1935), and citing *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)). By contrast, in the almost 90 years since those two decisions—both from 1935, and both about the same statute—the Supreme Court has consistently upheld "Congress' ability to delegate power under broad standards," *Mistretta v. United States*, 488 U.S. 361, 373 (1989), and "ha[s] 'almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law,'" *Am. Trucking*, 531 U.S. at 474–75 (quoting *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting)).

Applying those principles, the Supreme Court has upheld nearly every delegation it has confronted, including delegations:

- to the President to set and adjust tariffs as needed to "equalize the . . . differences in costs of production" between foreign and domestic goods, *J.W. Hampton*, 276 U.S. at 401 (citation omitted); *see id.* at 407–11;

- to the Federal Communication Commission to regulate broadcast licensing as "public interest, convenience, or necessity" requires, *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 225–26 (1943);

- to the Federal Power Commission to determine "just and reasonable" rates for wholesale sales of natural gas, *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 600 (1944);

- to the Price Administrator to fix commodity prices that would be "fair and equitable" and would "effectuate the purposes of th[e] [Emergency Price Control Act of 1942]," the

6

violation of which resulted in criminal sanctions, *Yakus v. United States*, 321 U.S. 414, 420 (1944) (citation omitted); *see id.* at 425–27;

- to the SEC to prevent unfair or inequitable distribution of voting power among security holders, *Am. Power & Light*, 329 U.S. at 104–05;

- to the Secretary of War to determine and recover "excessive profits" from military contractors, *Lichter v. United States*, 334 U.S. 742, 785–86 (1948) (citation omitted);

- to the Federal Home Loan Administration to make "rules and regulations . . . for the reorganization, consolidation, merger, or liquidation of [savings-and-loan] associations," *Fahey v. Mallonee*, 332 U.S. 245, 247, 249–50 (1947) (citation omitted);

- to the Sentencing Commission to promulgate (then-binding) sentencing guidelines establishing the permissible sentences for federal crimes, *Mistretta*, 488 U.S. at 374–77;

- to the Attorney General to designate controlled substances on a temporary basis, resulting in criminal penalties for unauthorized manufacture, possession, or distribution of such substances, *Touby v. United States*, 500 U.S. 160, 165–67 (1991);

- to the President to identify aggravating factors used to impose the death penalty in courts martial, *Loving v. United States*, 517 U.S. 748, 771–74 (1996); and

- to the Environmental Protection Agency to set nationwide air-quality standards limiting pollution to the level required "to protect the public health." *Am. Trucking*, 531 U.S. at 472 (quoting 42 U.S.C. § 7409(b)(1)); *see id.* at 472–76.

Section 105(a) fits comfortably within this precedent. The Sarbanes-Oxley Act expressly vests the Board with authority to establish procedures for the investigation and disciplining of accounting firms. 15 U.S.C. § 7215(a). Congress also "clearly delineate[d] the general policy," *Mistretta*, 488 U.S. at 372–73, that the Board establish procedures that are "fair" and consistent with the "requirements of this section [*i.e.*, Section 105]," 15 U.S.C. § 7215(a). The statute then goes on to identify specific requirements that further cabin the Board's authority. *See id.* §§ 7215(b)–(c).

Plaintiff nonetheless contends that section 105(a) is unconstitutional because it "d[oes] not define 'fair procedures' and provide[s] no intelligible principle to guide or constrain the Board in promulgating the rules." Compl. ¶ 44. As an initial matter, the requirement that the Board establish "fair" procedures is itself sufficient under the longstanding nondelegation precedents noted above.

7

*See, e.g., Gundy*, 588 U.S. at 146 (discussing cases in which the Court has upheld statutes authorizing agencies to set "fair and equitable prices," to fix "just and reasonable" rates, and to regulate "in the public interest"). But Plaintiff also ignores that—beyond simply requiring "fair procedures"—section 105(a) conveys additional details concerning the procedures the Board should use in its investigations and disciplinary processes. Section 105(b)(2) addresses requests or demands for testimony or documents. Section 105(b)(3) identifies potential sanctions for failure to cooperate with Board investigations. And Section 7215(b)(5) requires that documents received or prepared by the Board during an investigation, and the Board's deliberations themselves, should be treated as "confidential and privileged." Such provisions are far more detailed than delegations that the Supreme Court has found to be constitutionally sufficient. *See Gundy*, 588 U.S. at 146.

Notably, Plaintiff does *not* contend that Congress has failed to define with sufficient specificity the type of conduct that the Board may investigate or punish, or the range of sanctions it may impose. Rather, Plaintiff contends only that Congress unlawfully delegated authority as to the *procedures* the Board may use in determining whether violations have occurred and which of the permissible sanctions are appropriate. But, as the Board points out, the Supreme Court has long held that agencies are best positioned to develop procedures to govern their investigations. *See* Def.'s Mot. to Dismiss 19, ECF No. 49 (citing *Vt. Yankee Nuclear Power v. Nat. Res. Def. Council*, 435 U.S. 519, 549 (1978)).

Accordingly, Plaintiff's public-nondelegation challenge fails as a matter of law.

## II. THE SARBANES-OXLEY ACT DOES NOT VIOLATE THE PRIVATE-NONDELEGATION DOCTRINE

Plaintiff's second claim is that the Board is a "private entit[y]" that is "exercis[ing] core executive law enforcement power against Plaintiff without meaningful direction, oversight, and supervision by principal officers of the Executive Branch." Compl. ¶¶ 72, 74. Although Plaintiff does not use the term, this claim appears to invoke the so-called "private-nondelegation doctrine."

8

*See Dep't of Transp. v. Ass'n of Am. R.Rs. ("Amtrak")*, 575 U.S. 43, 50–51 (2015).  But Plaintiff cannot prevail under that doctrine for two independent reasons: (i) the Board is a governmental entity for purposes of the doctrine and (ii) the Board functions subordinately to the SEC.

### A.     The Board Is a Governmental Entity

Plaintiff's private-nondelegation claim is premised on its allegation that the Board is a "private," as opposed to a "governmental," entity.  Compl. ¶ 72.  But that premise is flawed; as the Supreme Court has observed, the Board is a "Government-created, Government-appointed entity," that is "part of the Government for constitutional purposes."  *Free Enter. Fund*, 561 U.S. at 485–86.  Because the Board is a governmental entity, the private-nondelegation doctrine does not apply to the Board.  *See Amtrak*, 575 U.S. at 50–51, 55 (holding that doctrine did not apply to Amtrak because it was a "governmental entity" for purposes of the doctrine, notwithstanding statute providing that Amtrak was "not a department, agency, or instrumentality of the United States Government").

### B.     The Board Functions Subordinately to the SEC

Plaintiff's private-nondelegation claim also fails because the Board "function[s] subordinately" to the SEC and thus would be constitutional even if the Board were considered a private entity.  *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940).

The private-nondelegation doctrine's earliest applications concerned ordinances that allowed homeowners to set zoning requirements for their neighborhoods.  *Washington ex rel. Seattle Title Tr. Co. v. Roberge*, 278 U.S. 116, 120–22 (1928); *Thomas Cusack Co. v. City of Chicago*, 242 U.S. 526, 530 (1917); *Eubank v. City of Richmond*, 226 U.S. 137, 143–44 (1912).  Such ordinances, the Supreme Court explained, were generally unconstitutional because they "conferr[ed] the power on some property holders to virtually control and dispose of the property rights of others," without setting any standard to prevent the private property owners from making public policy "solely for their own interest, or even capriciously."  *Eubank*, 226 U.S. at 143–44.  These ordinances were unlawful where

9

they "gave to [the decision of private entities] the effect of law." *Thomas Cusack Co.*, 242 U.S. at 531. Where municipal officials were "bound by the decision" of entities who themselves were not "bound by any official duty," the "delegation of power so attempted [was] repugnant to the due process clause of the Fourteenth Amendment." *Roberge*, 278 U.S. at 122.

The Supreme Court applied that doctrine to the federal government in *Carter v. Carter Coal Co.*, 298 U.S. 238 (1936). The Court held unlawful a federal statute that allowed the producers of more than two-thirds of the coal in any given district to set wages and hours for all the producers in that district, unconstrained by any public agency review. *Id.* at 281–83. That "obnoxious" delegation "to private persons whose interests may be and often are adverse to the interests of others in the same business," the Court held, was "clearly arbitrary" and "clearly a denial of rights safeguarded by the due process clause of the Fifth Amendment." *Id.* at 311.

In the wake of *Carter Coal*, Congress enacted a new statute under which local boards consisting of private coal producers would be organized under the Bituminous Coal Code and would "operate as an aid to the [National Bituminous Coal] Commission but subject to its pervasive surveillance and authority." *Adkins*, 310 U.S. at 388. The new statute "specifie[d] in detail the methods of [the boards'] organization and operation, the scope of their functions, and the jurisdiction of the Commission over them." *Id.* The Coal Commission was "empowered to fix minimum prices . . . in accordance with stated standards" following a procedure in which the code boards would "propose minimum prices pursuant to prescribed statutory standards," which "may be approved, disapproved, or modified by the Commission." *Id.*

In reviewing this revised scheme in *Sunshine Anthracite Coal Co. v. Adkins*, the Supreme Court determined that the revised statutory standards for fixing coal prices were "a valid delegation of authority" to the Coal Commission because they "far exceed[ed] in specificity others which have been sustained." *Id.* at 398. Then, in addressing the plaintiff's private-nondelegation arguments, the

10

Court held that no constitutional problem arose from involving private industry in the regulatory scheme because "members of the code function subordinately to the Commission." *Id.* at 399. "It, not the code authorities, determines the prices. And it has authority and surveillance over the activities of these authorities. Since law-making is not entrusted to the industry, this statutory scheme is unquestionably valid." *Id.*

Under *Adkins*, Plaintiffs' claim fails, because the Board "function[s] subordinately" to the SEC, 310 U.S. at 399, which maintains "oversight and enforcement authority over the Board," 15 U.S.C. § 7217(a). The SEC exercises "[b]road power over Board functions," and "may, for example, approve the Board's budget, § 7219(b), issue binding regulations, §§ 7202(a), 7217(b)(5), relieve the Board of authority, § 7217(d)(1), amend Board sanctions, § 7217(c), or enforce Board rules on its own, §§ 7202(b)(1), (c)." *Free Enter. Fund*, 561 U.S. at 504. The SEC must approve all of the Board's rules, and the SEC may abrogate, add to, and delete from those rules as it deems necessary. 15 U.S.C. §§ 7217(b)(3), (5) (incorporating 15 U.S.C. § 78s(c)). Moreover, the Board must notify the SEC of any final disciplinary action it takes against an accounting firm, which is thereafter subject to *de novo* review by the SEC, acting *sua sponte* or in response to a petition from the aggrieved party. *Id.* § 7217(c) (incorporating 15 U.S.C. § 78s(d)–(e)). Any Board sanction is automatically stayed on the filing of an application for SEC review or the institution of proceedings by the SEC, unless and until the SEC orders that a stay should not continue. *Id.* § 7215(e). And Board members are removable by the SEC at will. *Free Enter. Fund*, 561 U.S. at 509.

Courts have repeatedly held that similar arrangements between the SEC and the self-regulatory organizations on which the Board was based are constitutional. *Oklahoma v. United States*, 62 F.4th 221, 229 (6th Cir. 2023) ("In case after case, the courts have upheld this arrangement, reasoning that the SEC's ultimate control over the rules and their enforcement makes SROs permissible aides and advisors."). Indeed, every court of appeals to consider the question has agreed

11

that the similar structure between the SEC and FINRA (or its predecessor, NASD) is constitutional because the statute gives the SEC the power to approve or disapprove of rules and conduct *de novo* review of disciplinary sanctions.  *R.H. Johnson & Co. v. SEC*, 198 F.2d 690, 695 (2d Cir. 1952); *see Todd & Co. v. SEC*, 557 F.2d 1008, 1012–13 (3d Cir. 1977); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 697 (3d Cir. 1979); *Sorrell v. SEC*, 679 F.2d 1323, 1325–26 (9th Cir. 1982).

In sum, because the Board "function[s] subordinately" to the SEC, *Adkins*, 310 U.S. at 399, the Board would not violate the private-nondelegation doctrine even if it were considered a private entity.

## CONCLUSION

The Court should first consider the threshold arguments raised by the Board.  If the Court does reach the merits, however, it should hold that the challenged provisions of the Sarbanes-Oxley Act are constitutional.

Dated:  October 16, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director

/s/ John Robinson
JOHN ROBINSON (Bar No. 1044072)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
(202) 616-8489
john.j.robinson@usdoj.gov

*Counsel for Defendant*